UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SHAH CAPITAL MANAGEMENT LIMITED, :

                Petitioner,        :

      v.                      :

CROWE HORWATH LLP;  KPMG LLP;    :
CHARLES SCHWAB & CO., INC.;
SHEARMAN & STERLING LLP;  TD     :      Case No.  17-cv-_____
AMERITRADE;  FIDELITY INVESTMENTS; :
UBS SECURITIES LLC;  UBS AG;  CATHAY
BANK;  PAUL HASTINGS LLP;
MORRISON & FOERSTER LLP;  LESTER
SCHWAB KATZ & DWYER, LLP;
ANDREW N. BERNSTEIN;  PUGLISI &
ASSOCIATES;  THE DEPOSITORY TRUST
COMPANY;  AND CT CORPORATION
SYSTEM,

                Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## *EX PARTE* APPLICATION FOR AN ORDER PERMITTING DISCOVERY FOR USE IN A FOREIGN PROCEEDING UNDER 28 U.S.C. § 1782

Shah Capital Management Limited ("Shah" or "Petitioner"), by and through

its undersigned counsel, makes the following application to conduct discovery of certain third

parties ("Respondent(s)" or "Discovery Target(s)") engaged by Qiao Xing Mobile

Communication Company Limited ("QXM"), who are Residents of the United States and

conduct business affairs in the Southern District of New York, pursuant to 28 U.S.C. § 1782, for

use in a foreign liquidation proceeding titled, *In the Matter of Qiao Xing Mobile Communication*

*Company Limited, between Applicant Shah Capital Management and Respondent Qiao Xing*

*Mobile Communication Company Limited*, Claim No. BVIHCM 2016/0051, ("BVI Proceeding")

in The Eastern Caribbean Supreme Court, of the British Virgin Islands, in the High Court of Justice, Commercial Division ("<u>BVI Court</u>").[1]

       The third parties for which Petitioner seeks an order allowing discovery are: Crowe Horwath LLP; KPMG LLP; Charles Schwab & Co., Inc.; Shearman & Sterling LLP; TD Ameritrade; Fidelity Investments; UBS Securities LLC; UBS AG; Cathay Bank; Paul Hastings LLP; Morrison & Foerster LLP; Lester Schwab Katz & Dwyer, LLP; Andrew N. Bernstein; Puglisi & Associates; The Depository Trust Company; and CT Corporation System (collectively, "<u>Respondents</u>" or "<u>Discovery Targets</u>").

       Petitioner alleges as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1782.

## VENUE

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because each Discovery Target is engaged or was previously engaged by QXM, each Discovery Target resides or is found in this District, and because a substantial part of the events giving rise to this proceeding occurred in this District.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Crowe Horwath LLP resides or is found in this District, because Crowe Horwath LLP maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

---

[1] <u>See</u> Exhibit A, attached to the Declaration of Callum McNeil, for BVI Order for the Appointment of Liquidators.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because KPMG LLP resides or is found in this District, because KPMG LLP maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Charles Schwab & Co., Inc. resides or is found in this District, because Charles Schwab & Co., Inc. maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Shearman & Sterling LLP resides or is found in this District, because Shearman & Sterling LLP maintains an office in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because TD Ameritrade resides or is found in this District, because TD Ameritrade maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Fidelity Investments resides or is found in this District, because Fidelity Investments maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because UBS Securities LLC resides or is found in this District, because UBS Securities LLC

maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because UBS AG resides or is found in this District, because UBS AG maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Cathay Bank resides or is found in this District, because Cathay Bank maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Paul Hastings LLP resides or is found in this District, because Paul Hastings LLP maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Morrison & Foerster LLP resides or is found in this District, because Morrison & Foerster LLP maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Lester Schwab Katz & Dwyer, LLP resides or is found in this District, because Lester Schwab Katz & Dwyer, LLP maintains offices in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Andrew N. Bernstein resides or is found in this District, because Andrew N. Bernstein conducts business in this District, and because a substantial part of the events giving rise to this proceeding occurred in this District.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because Puglisi & Associates resides or is found in this District, because Puglisi & Associates conducts business in Manhattan, and upon information and belief, has previously been designated as an agent to receive process or other legal summons in the City of New York for a client, and because a substantial part of the events giving rise to this proceeding occurred in this District.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because The Depository Trust Company resides or is found in this District, because The Depository Trust Company conducts business in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because CT Corporation System resides or is found in this District, because CT Corporation System conducts business in Manhattan, and because a substantial part of the events giving rise to this proceeding occurred in this District.

## BACKGROUND

19.     QXM is a company which was incorporated in the British Virgin Islands ("BVI") on January, 31, 2002 and has its registered office address at Romasco Place, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, VG1110.

20.     QXM is a domestic manufacturer of mobile handsets in China.

21.     QXM's principal place of business is in China and it operates through its various
subsidiaries and related entities including: Qiaoxing Telecommunication Industry Co., Ltd.;
Cosun Group Co., Ltd.; CEC Telecom Co., Ltd.; CECT Telecom Co., Ltd.; Huizhou
Qiaoxing Telecom Industrial Co., Ltd.; Huizhou Qiaoxing Telecommunication Industrial
Co., Ltd.; Huizhou Qiaoxing Luo Shi Purified Science Technology Co., Ltd.; Huizhou
Qiaoxing Group Co., Ltd.; Huizhou Cosun Commercial & Trading Co., Ltd.; Huizhou Cosun
Communication Industrial Co., Ltd.; Qiaoxing Famous Technical Co., Ltd.; Qiao Xing
Universal Resources, Inc.; Qiao Xing Universal Telephone, Inc.; Qiao Xing
Telecommunication Industry Co. Ltd.; Qiao Xing Holdings Limited; Qiao Xing Information
Limited; Qiaoxing Electronics Holdings Company Limited; Qiao Xing Group International
Limited; Strong Metropolitan Limited; Lightful Limited; and Beijing VEVA Technology
Co., Ltd. (collectively, "QXM Related Entities").

22.     On May 2, 2007, QXM completed a successful initial public offering for
13,333,334 shares at $12.00 per share on the New York Stock Exchange ("2007 IPO" or
"IPO"). However, trading of QXM on the New York Stock Exchange was halted on May 2,
2012. On August 23, 2012, QXM's common stock was revoked by the U.S. Securities &
Exchange Commission ("SEC").

23.     Shah is an investment firm, current shareholder of QXM, and has a principal
place of business in the United States.

24.     The former Chief Executive Officer of QXM, Rui Lin Wu ("Wu"), beneficially
owned or controlled in excess of 60% of the shares issued by QXM at all times.

25.     QXM and its CEO, Mr. Wu engaged various third parties in the U.S. before and
after the 2007 IPO for the purposes of organizing, financing, auditing, and publicly listing the

Company. These third parties included a number of law firms, financial institutions, and

accounting firms, among other entities, each of which would have firsthand knowledge of

and records reflecting QXM's financial dealings and holdings that are not otherwise available

to Petitioner.

26.     QXM has not provided updated financial statements to the public since its last

annual report filed with the SEC on June 30, 2011.

27.     QXM and its CEO, Wu, engaged in self-dealing and transferred a wholly owned

QXM subsidiary, CEC Telecom Co., Ltd. to China Qiao Xing Group Company, which was

controlled by Wu.

28.     U.S. investors received no compensation for this transaction. However, Wu and

other insider QXM shareholders received shares or had the value of their existing shares

increased.

29.     On October 14, 2015, Shah and other claimants (the "Claimants") filed a lawsuit

against QXM in the BVI Court.[2] The Claimants requested an Entry of Judgment in Default of

Defence on November 13, 2015, which was entered on December 1, 2015.[3] On December

22, 2015, the BVI Court determined the terms of judgment in default against QXM for an

aggregate Judgment Debt of 61,159,839 United States Dollars.[4]

30.     QXM failed to satisfy or settle the Judgment Debt, therefore on February 8, 2016,

a statutory demand was served on QXM by Shah, one of the Claimants, which was owed

42,700,042 United States Dollars.[5] QXM failed to pay or apply to set aside the statutory

demand, therefore on April 14, 2016 Shah filed an application to wind up QXM which was

[2] See Exhibit B, attached to the Declaration of Callum McNeil, for Sealed Statement of Claim
[3] See Exhibit C, attached to the Declaration of Callum McNeil, for Judgment in Default of Defence.
[4] See Exhibit D, attached to the Declaration of Callum McNeil, for Order determining terms of the Judgment.
[5] Id.

duly granted by His Lordship Justice Jules Sher on May 23, 2016.[6] The Liquidator, Stuart

Mackellar of AlixPartners (BVI) Limited (formerly Zolfo Cooper (BVI) Limited),

subsequently appointed Robert W. Seiden, Esq., a New York resident as an agent to assist

him to locate and recover assets belonging to QXM.

31.     QXM engaged the assistance of Crowe Horwath LLP as an auditor, and therefore

the accounting firm will be in possession of certain records and correspondence which is not

available through the BVI Court or through other means accessible by Petitioner.

32.     QXM engaged the assistance of KPMG LLP as an auditor, and therefore the

accounting firm will be in possession of certain records and correspondence which is not

available through the BVI Court or through other means accessible by Petitioner.

33.     QXM engaged the assistance of Charles Schwab & Co., Inc. in preparing for its

IPO, and therefore the brokerage firm will be in possession of certain records and

correspondence which is not available through the BVI Court or through other means

accessible by Petitioner.

34.     QXM engaged the assistance of Shearman & Sterling LLP in preparing for its

IPO, and therefore the law firm will be in possession of certain records and correspondence

which is not available through the BVI Court or through other means accessible by

Petitioner.

35.     QXM engaged the assistance of TD Ameritrade in preparing for its IPO and as

broker of QXM shares, and therefore the brokerage firm will be in possession of certain

records and correspondence which is not available through the BVI Court or through other

means accessible by Petitioner.

---

[6] See Exhibit A, attached to the Declaration of Callum McNeil, for Order for the Appointment of Liquidators.

36.     QXM engaged the assistance of Fidelity Investments in preparing for its IPO and as an investment manager and broker, and therefore the brokerage firm will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

37.     QXM engaged the assistance of UBS Securities LLC as the sole bookrunner in preparing for its IPO, and therefore the firm will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

38.     QXM engaged the assistance of UBS AG in preparing for its IPO as an underwriter, and therefore UBS AG will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

39.     Rui Lin Wu engaged the mortgage lending services of Cathay Bank in purchasing real property, and therefore the bank will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

40.     QXM engaged the assistance of Paul Hastings LLP in preparing for its IPO, and therefore the law firm will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

41.     QXM and Rui Lin Wu engaged Morrison & Foerster LLP as legal representation in *Mally v. Qiao Xing Universal Telephone, Inc. et al.*, No. 1:07-cv-07097-DLC (S.D.N.Y.) and a series of related cases, and therefore the law firm will be in possession of certain

records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

42.     Grobstein, Horwath & Company LLP, QXM's auditors and accountants, engaged Lester Schwab Katz & Dwyer, LLP as legal representation in *Mally v. Qiao Xing Universal Telephone, Inc. et al.*, No. 1:07-cv-07097-DLC (S.D.N.Y.) and a series of related cases. Therefore the law firm will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner. Grobstein, Horwath & Company LLP has since been absorbed by Crowe Horwath LLP, also a Discovery Target.

43.     QXM engaged the escrow services of Andrew N. Bernstein, and therefore he will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

44.     QXM engaged the assistance of Donald Puglisi of Puglisi & Associates who served as a Director of QXM, and authorized representative in the United States. Therefore, the firm will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

45.     QXM engaged the assistance of The Depository Trust Company in preparing for its IPO, and therefore The Depository Trust Company will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

46.     QXM utilized CT Corporation System as its registered agent, including listing it as such on documents filed with the SEC in connection with QXM's IPO, and therefore CT

Corporation System will be in possession of certain records and correspondence which is not available through the BVI Court or through other means accessible by Petitioner.

**RELIEF REQUESTED**

47.     Under 28 U.S.C. § 1782, parties such as Shah may obtain discovery for use in foreign litigation from companies or individuals located within the United States.

48.     In support of the BVI Proceeding, Shah seeks discovery of QXM records, held by third parties that QXM engaged. Specifically, Shah seeks to maximize the recovery for QXM shareholders that have been left with illiquid shares that cannot be traded.

49.     Petitioner seeks information regarding QXM's assets moved through or by the Discovery Targets which is owed to the company's creditors under the judgment of the BVI Court. Discovery of records in the United States is critical to reconstruct financial records, evaluate key transactions, and identify and recover the debtors' assets. In this application, Shah seeks an order pursuant to 28 U.S.C. § 1782 permitting discovery for use in the BVI Proceeding.

50.     Annexed to the accompanying Declaration of Craig Weiner as Exhibit A is the form of a proposed order.

51.     Annexed to the accompanying Declaration of Craig Weiner as Exhibits B – Q are the proposed Notices to Produce.

**Discovery Sought by Petitioner Meets the Requirements of 28 U.S.C. § 1782**

52.     Section 1782(a) provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The

order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

53.    Section 1782 has three requirements: "(1) that the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by . . . 'any interested person.'" In re Application of Esses, 101 F.3d 873, 875 (2d Cir. 1996) (citation omitted).

54.    The goals of § 1782,

which dates back to 1855, are to provide "equitable and efficacious" discovery procedures in United States courts "for the benefit of tribunals and litigants involved in litigation with international aspects," and to "encourage foreign countries by example to provide similar means of assistance to our courts." In pursuit of these twin goals, the section has, over the years, been given "increasingly broad applicability."

Lancaster Factoring Co. Ltd. v. Mangone, 90 F.3d 38, 41 (2d Cir. 1996) (quoting, in part, S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964)) (internal citations omitted)); see also, Marubeni Am. Corp. v. LBA Y.K., 335 F. App'x 95, 96 (2d Cir. 2009) (summary order).

55.    The proposed discovery satisfies the requirements of § 1782. The Discovery Targets reside or are found in this district by virtue of their offices in the district and their conducting business in the district. The discovery sought would be used in the foreign proceeding to reconstruct financial records, evaluate key transactions, and identify and

recover the debtors' assets. As per BVI law, Shah and QXM are parties. <u>See</u> Declaration of

Callum McNeil. There is no doubt that the BVI Court is a "tribunal" for purposes of the

statute. A tribunal is any entity that conducts "proceedings in which an adjudicative function

is being exercised." <u>In re Application of Esses</u>, 101 F.3d at 876 (citation omitted).

     56.     Finally, Shah is clearly an "interested person" for purposes of the statute because

it is a party to the BVI Proceeding. <u>Id.</u> at 875 ("an 'interested person' includes one who is a

'party to ... foreign or international litigation.'") (citation omitted).

     57.     However, Shah also falls within the broader meaning of "interested person," even

apart from its status as a party to the case. The Supreme Court has not set minimum

requirements to be considered in determining whether a petitioning party is an "interested

person," <u>see</u> <u>Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of Fortress</u>

<u>Inv. Grp. L.L.C. v. KPMG, L.L.P.</u>, 798 F.3d 113, 118 (2d Cir. 2015), but the Court has noted

that an "interested person" includes not only parties to the foreign litigation, but also one who

"possess[es] a reasonable interest in obtaining [judicial] assistance," a category into which

Shah also falls. <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 256 (2004)

(citation omitted) (alteration in original).

     58.     Once the requirements of § 1782 are met, the District Court has broad discretion

to grant discovery requests. Courts have stressed that § 1782 should be given broad effect:

"[A]llowance of liberal discovery seems entirely consistent with the twin aims of section

1782: providing efficient assistance to participants in international litigation and encouraging

foreign countries by example to provide similar assistance to our courts." <u>Advanced Micro</u>

<u>Devices, Inc. v. Intel Corp.</u>, 292 F.3d 664, 669 (9th Cir. 2002) (citation omitted), <u>aff'd</u>, <u>Intel</u>

<u>Corp</u>, 542 U.S. 241 (2004).

59.     In <u>Intel</u>, the Supreme Court specified that a district court presented with a §

1782(a) request should take into account four factors:

(1) Whether the person from whom discovery is sought is a participant in the foreign

proceedings, in which case "the need for § 1782(a) aid generally is not as apparent as it

ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

(2) "[T]he nature of the foreign tribunal, the character of proceedings underway abroad,

and the receptivity of the foreign government, court, or agency to federal-court judicial

assistance";

(3) "[W]hether the § 1782(a) request conceals an attempt to circumvent foreign proof-

gathering limits or other policies of a foreign country or the United States"; and

(4) Whether the discovery requests are "unduly intrusive or burdensome."

<u>Intel</u>, 542 U.S. at 264–66.

60.     As the Second Circuit has explained, District Courts must exercise their discretion

under § 1782(a) in light of the twin aims of the statute: "providing efficient means of

assistance to participants in international litigation in our federal courts and encouraging

foreign countries by example to provide similar means of assistance to our courts . . . ." <u>In re

Application for an Order Permitting Metallgesellschaft AG to take Discovery</u>, 121 F.3d 77,

79 (2d Cir. 1997) (citation omitted); <u>see</u> <u>also</u> <u>Marubeni</u>, 35 F. App'x at 96. These

considerations weigh heavily in favor of generous federal court assistance. <u>See</u>, <u>e.g.</u>,

<u>Edelman v. Taittinger</u>, 295 F.3d 171, 180 (2d Cir. 2002).

61.     The first factor—whether the person from whom the discovery is sought is a party

to the foreign proceeding—militates in favor of the requested discovery. The Discovery

Targets are not party to the BVI Proceeding and are outside of the jurisdiction of the BVI

Court. Absent this Court granting Shah's request, the evidence sought to support the BVI Proceeding would be unattainable.

62.     The second discretionary factor, which concerns the receptivity of the foreign government or its courts to United States federal court assistance, also favors ordering the requested production. See Intel, 542 U.S. at 264. This factor separately encompasses considerations of: (l) whether United States assistance is likely to offend the foreign tribunal, see, e.g., Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099–1100 (2d Cir. 1995); and (2) whether the material sought is admissible evidence in the foreign tribunal, see, e.g., In re Application of Grupo Qumma, S.A., 2005 WL 937486, at *3 (S.D.N.Y. Apr. 21, 2005). Here, the BVI Court would allow the evidence to be utilized, and thus ordering its production would not offend the foreign country because the evidence would be admissible. See Declaration of Callum McNeil.

63.     Foreign liquidator proceedings have been found to be the type of proceedings where § 1782 is applicable. See In Re Ex Parte Gissin, 649 F. App'x 27 (2d Cir. 2016) (summary order); see also In re Application of Hill, 2005 WL 1330769, at * 5 (S.D.N.Y. June 3, 2005) (granting § 1782 petition to liquidator in a Hong Kong liquidation proceeding, noting that "[t]he fact that the Liquidators may use the fruits of discovery to pursue potential claims against third parties does not undermine their equally legitimate goals of reconstructing financial records, evaluating key transactions and identifying and recovering the debtors' assets."). Furthermore, "[p]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence." In re Petition for Judicial Assistance

Pursuant to 28 U.S.C. § 1782, No. 16-2389 (JLL) (JAD), 2016 U.S. Dist. LEXIS 68379, at *11 (D.N.J. May 25, 2016) (citation omitted).

64.     Petitioner has not brought this action to circumvent BVI court orders or procedures. Rather, the locus of the evidence sought is in this District. See generally In re Kreke Immobilien KG, 2013 U.S. Dist. LEXIS 160283, at *16–20 (S.D.N.Y. Nov. 8, 2013). Further, the information sought here would be used to support court orders in the BVI Proceeding, including the Liquidator's "Power to sell or otherwise dispose of property of the Company".[7] As a result, the third Intel factor favors discovery.

65.     Finally, the fourth Intel factor concerns whether the discovery requests are unduly intrusive or burdensome. Here, they are neither. Petitioner should have the right to depose the Discovery Targets and review the materials that support the Liquidator in the BVI Proceeding. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015); see also Fed. R. Civ. P. 26(a)(2) and 26(b)(4)(D).

**WHEREFORE**, for the foregoing reasons, Shah requests that an order be entered directing the Discovery Targets to provide all the documents requested and/or to appear for a deposition, and such other and further relief as this Court deems just and proper.

---

[7] See Exhibit A, attached to the Declaration of Callum McNeil, § 5(a).

16

Dated: New York, New York.
      January 23, 2017

Respectfully submitted,

**ROBINS KAPLAN LLP**
601 Lexington Avenue
Suite 3400
New York, NY 10022
212 980 7400

By: _____

    Craig Weiner
    Attorney for Petitioner
    Shah Capital